■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN LAFFMAN, Appellant.—Order of the Supreme Court, New York County (Edwin Torres, J.), entered on or about May 17, 1989, which denied the defendant's motion pursuant to CPL article 440 to vacate the judgment rendered against him by the same court on February 14, 1984, convicting him, after a jury trial, of robbery in the first degree (Penal Law § 160.15), kidnapping in the second degree (Penal Law § 135.20), robbery in the second degree (Penal Law § 160.10) and assault in the second degree (Penal Law § 120.05), and sentencing him to concurrent prison terms of from 7 to 21 years for first degree robbery and second degree kidnapping, 5 to 15 years for second degree robbery, and 2⅓ to 7 years for second degree assault, unanimously reversed, on the law, and the motion granted to the extent of vacating the judgment of conviction and remanding for a hearing as to the existence of an independent source for the complainant's identification testimony, and for a new trial.

Defendant-appellant Laffman and codefendant Rodriguez were identified by the complainant at a station house showup as the men who had robbed him at knifepoint. Just prior to viewing Laffman and Rodriguez, the complainant was told by the police that two suspects had been apprehended. Laffman and Rodriguez were then displayed to him through an open door, handcuffed and flanked by State Troopers. These circumstances, claimed the defendants, were highly suggestive and rendered the complainant's identification testimony unreliable. Their motion to suppress the testimony was, however, denied, the motion court finding, after a *Wade* hearing, that the station house identification procedures had not been improper. Having so found, the court had no occasion to continue the bifurcated hearing to determine whether there existed an independent basis for the complainant's identification testimony. The defendants were subsequently convicted of various offenses in connection with the knifepoint robbery of

the complainant and their judgments of conviction affirmed by this court *[People v Laffman,* 118 AD2d 1051; *People v Rodriguez,* 120 AD2d 995].*

Both defendants thereafter sought leave to appeal from the Court of Appeals. The Court of Appeals granted the application of Rodriguez [68 NY2d 759] but denied that of Laffman [68 NY2d 669]. Rodriguez's case was eventually decided along with a companion case, *People v Riley* (70 NY2d 523). In reversing Rodriguez's conviction, the court observed that the station house identification procedures employed had been "patently exploitive and suggestive" *(supra,* at 530) and concluded that "precinct showup procedures should have almost no place in acceptable identification procedures, unless exigency warrants them" *(supra,* at 531). As this court has already had occasion to note, *Riley* propounded a new standard for evaluating the propriety of precinct showups *(see, People v Hale,* 142 AD2d 172, 174). Whereas previously, station house showup procedures were evaluated according to a "totality of the circumstances" standard *(see, People v Adams,* 53 NY2d 241), after *Riley* their exclusion was mandated in all but those cases in which the People were able to demonstrate that showup procedures were compelled by exigent circumstances.

There can be no question that, had defendant-appellant Laffman been permitted to appeal the affirmance of his conviction to the Court of Appeals, his conviction would have been reversed, for he was subject to exactly the same "patently exploitive and suggestive" station house showup procedures found to require reversal in the case of his codefendant Rodriguez. Thus, the question posed is not what result *Riley (supra)* would require in Laffman's case, but whether the rule articulated in *Riley* may be applied retroactively. In *People v Hale (supra,* at 175), we held that *Riley's* more stringent standard for evaluating the legality of precinct showups was to be retroactively applied since the new rule affected basic due process requirements designed to reduce the risk of convicting the innocent *(see also, People v Adams,* 53 NY2d 241, 251, *supra).* The People attempt to distinguish *Hale,* noting that *Hale's* retroactive application of *Riley* came on direct appellate review rather than, as here, in a collateral attack upon the judgment of conviction. The distinction, however, is without legal significance. Where a new rule, such as the one announced in *Riley,* has as its purpose preserving the fact-finding process from unreliably obtained information bearing directly and substantially on a defendant's guilt or innocence,

the rule should be applied retroactively, whether on direct review or in collateral proceedings *(see, People v Pepper,* 53 NY2d 213, 221). The alternative would be to countenance the radically disparate treatment by courts of persons similarly, indeed, as here, identically, situated in matters upon which a determination of guilt or innocence may vitally depend. That is an alternative which we decline to embrace.

Inasmuch as the People's failure to present proof of independent source to support the complainant's identification testimony is apparently attributable to the motion court's erroneous ruling as to the admissibility of the station house showup identifications, which ruling curtailed the bifurcated *Wade* hearing after the conclusion of its first phase, we think that, on remand, the People should be afforded an opportunity to present evidence of independent source at a new pretrial hearing *(see, People v Havelka,* 45 NY2d 636, 644). We, however, decline to reach the conclusion urged by the People that, if independent basis for the complainant's identification of defendant-appellant is found, no new trial is necessary. We do not think that the admission of testimony respecting the "patently exploitive and suggestive" station house showup at defendant-appellant's first trial can be deemed harmless. A new trial was ordered by the Court of Appeals in the case of appellant's codefendant, Rodriguez *(People v Riley, supra,* at 532), and there must be one here as well. Concur—Murphy, P. J., Rosenberger, Kassal and Smith, JJ.